IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WOODEN | ) | CASE NO. 1:04 CV 676 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I. Introduction

Before the Court is John Wooden's petition for a writ of habeas corpus.[1] Wooden is incarcerated at the Mansfield Correctional Institute, Mansfield, Ohio, upon conviction for two counts of rape, two counts of kidnapping, two counts of gross sexual imposition, and one count of attempted rape.[2]

In his habeas petition, Wooden raises five grounds for relief.[3] The state acknowledges custody of Wooden but opposes all five grounds of the petition as being procedurally defaulted.[4]

---

[1] ECF # 1.

[2] *Id.* at 2. Although Wooden's petition states that he is also convicted of one count of burglary, the record indicates that he was found not guilty of the burglary count by the jury. ECF # 20 at 42.

[3] ECF # 1 at 5-6.

[4] ECF # 18 at 2.

## II.  Facts

**A.    Trial**

The state appeals court recounted the following relevant testimony from Wooden's trial:

> In the present case, J.H. [the victim] testified that she lived on Wilbeth Road in Summit County.  She stated that she was born in 1987 and that, when the incidents occurred, she was thirteen years old.  Prior to the incidents, J.H. did not know Appellant, but had seen him around the neighborhood.  J.H. described the first incident that occurred in January of 2001.  She was walking through the field at her school when Appellant approached her and asked for a cigarette.  J.H. told him that she did not have any cigarettes but Appellant continued to follow her, telling her that his name was Mike and that he was nineteen years old.  Appellant told her that he wanted her to be his girlfriend.  When J.H. told him to leave her alone, Appellant grabbed her by the shirt and dragged her to a wooded area.  Appellant threw J.H. to the ground and restrained her for three to five minutes while he touched her breast and tried to unbutton her pants. J.H. stated she was able to get away by kicking Appellant.
>
> J.H. testified that she went home and told her older brother, Kyle Davis, about Appellant's attack.  She explained that she was too scared to tell her parents or the police.  J.H. also testified that, in March of 2001, she was again walking through the field.  She did not know that Appellant was following her but, from a distance, Mr. Davis noticed Appellant approaching. Mr. Davis ran over toward him and asked Appellant what he was doing.   Appellant responded that he had lost his drugs and the confrontation ended.
>
> J.H. testified that, on June 7, 2001, she walked to the Rosemary apartment complex to visit a friend.  While at the complex, two men grabbed her and pulled her into an apartment.  One of the men was Appellant while the other was an unknown man that J.H. described as "biracial."  Appellant was wearing a shirt from an Arby's restaurant.  J.H. was told to shut up while Appellant hit her on the leg and on her behind.  The other man pulled her head to the ground by her ponytail.  Appellant pulled up J.H.'s shirt and bit her breast.  Appellant then took off J.H.'s pants and underwear.  He placed his fingers in her vagina and laughed.  Next, he place his penis into her vagina, telling her to shut up when she began to scream.  Then, he verbally harassed

her and attempted to anally penetrate her. The tip of Appellant's penis entered J.H.'s rectum. J.H. indicated that this was painful. At this point, the other man told Appellant to let J.H. go. Appellant again verbally harassed J.H. as she gathered up her clothes, ran out the door, and fell to the grass outside the apartment. At trial, J.H.'s grass stained pants were introduced as evidence.

J.H. testified that she went home, took a shower and told her brother. She stated that she was too scared and too embarrassed to tell her parents or the police. She also stated that, following the rape, she bled when she tried to urinate. J.H. testified that, the next morning, her brother convinced her to tell her parents about the rape. Her father immediately called the police and she was taken to the hospital for a physical examination. J.H. testified that she never consented to any of the things that Appellant did to her.[5]

Details of the victim's account were supported at trial by testimony from the victim's brother,[6] father,[7] the examining nurse at the hospital,[8] two forensic scientists from the Ohio Bureau of Criminal Identification,[9] and two detectives from the Akron police.[10]

---

[5] *State v. Wooden*, No. 21138, 2003 WL 1877631 at \*\*2-3 (Ohio App. 9 Dist., April 16, 2003). A copy of this opinion is attached for the convenience of the District Judge.

[6] *Id.* at \* 3 (testifying that he had picked Wooden's photo from a photo array as the one who had been harassing his sister and that the victim had told him of the rape the day it happened).

[7] *Id*. at \* 4 (testifying that the victim told him about the rape the next morning).

[8] *Id.* (testifying that the victim's hymen showed evidence of "penetrating trauma").

[9] *Id.* (testifying that Wooden "could not be excluded as a source" for semen obtained from vaginal smears of the victim and from the victim's underwear; and that DNA from the vaginal swab "originated from" Wooden).

[10] *Id.* (testifying that Wooden was wearing an Arby's shirt when first interviewed by police; that Wooden was identified by the victim from a photo array "without hesitation;" and that Wooden originally gave police a false address, claimed he did not know the victim, and was a homosexual).

Wooden testified in his own defense that the victim consented to sexual intercourse after accepting an invitation to come into an apartment for a cigarette.[11] He denied knowing her age.[12]

## B. Appeals

Subsequent to his conviction, sentencing, and finding him to be a sexual predator, Wooden, acting through new counsel, appealed his conviction and sentence in state court.[13]

In that appeal, Wooden asserted the following seven assignments of error:

**First Assignment of Error**
The conviction of the Appellant for the charges of kidnapping (2 cts.), rape (2 cts.), gross sexual imposition (2 cts.), and attempted rape (1 ct.) in this case are against the manifest weight of the evidence and should be reversed.

**Second Assignment of Error**
The trial court incorrectly denied Appellant's motion for acquittal in violation of Criminal Rule 29; specifically, there was not sufficient evidence to prove the offenses of kidnapping, rape, gross sexual imposition and attempted rape beyond a reasonable doubt and submit them to the jury.

**Third Assignment of Error**
The trial court erred to the prejudice of Appellant and in violation of Criminal Rule 29(A), Article 1, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, when it denied Appellant's motion for acquittal.

**Fourth Assignment of Error**
The trial court erred to the prejudice of the Appellant when it denied his motion to allow the jury to consider the lesser included offense of corruption of a minor.

---

[11] *Id.* at *5.

[12] *Id.*

[13] ECF # 20 at 52.

**Fifth Assignment of Error**
The trial court erred to the prejudice of the Appellant by overruling his objections to the testimony of Detective Irvine which alleged that he was "stalking girls in the neighborhood."

**Sixth Assignment of Error**
The trial court erred to the prejudice of the Appellant in denying his motion for a mistrial.

**Seventh Assignment of Error**
The trial court erred in sentencing the Appellant to consecutive terms of incarceration and improperly followed the procedure in imposing the sentence pursuant to the felony sentencing guidelines set forth in R.C. chapter 2929.[14]

The appeals court ruled against Wooden on all counts.[15] Thereupon, now proceeding *pro se*, Wooden sought a delayed appeal at the Ohio Supreme Court from the state appellate court ruling.[16] The Ohio Supreme Court denied Wooden's motion.[17] No appeal of that denial was taken to the United States Supreme Court.

Simultaneously with his efforts to make a delayed appeal to the Ohio Supreme Court, Wooden sought to reopen his appeal at the state appeals court.[18] In attempting to reopen his appeal, Wooden, proceeding *pro se*, made two claims for relief:

    I.  Appellant counsel was ineffective by failing in his duty to avoid conflicts of interest and failing to raise that trial counsel was ineffective for failing to object and allowing other acts of evidence heard and used by the jury

---

[14] ECF # 20 at 52.

[15] *Wooden*, No. 21138, 2003 WL 1877631 at *10.

[16] ECF # 20 at 157.

[17] *Id*. at 183.

[18] *Id*. at 184.

-5-

as substantive evidence for a conviction under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and Section 16 to the Ohio Constitution.

II. Appellant counsel was ineffective by failing to inform client and this court of the error of the trial court, by failing to bring forth the appellant's consecutive sentences per R.C. 2929.14, violating the appellant's due process of proper sentence.[19]

The state appellate court denied Wooden's application to reopen his appeal as untimely.[20] No appeal of this decision was made to the Ohio Supreme Court.

Wooden, however, moved to reconsider the denial of his motion to reopen his appeal.[21] The state appeals court, finding Wooden's motion untimely and without extraordinary circumstances justifying its untimeliness, ordered it stricken without considering the merits.[22] This decision was also not appealed to the Ohio Supreme Court.

**C.     Habeas petition**

Subsequent to the denial of his motion to reconsider the denial of his motion to reopen his appeal, Wooden, again acting *pro se*, sought a writ of habeas corpus in this Court by raising four grounds for relief:

---

[19] *Id.*

[20] *Id.* at 195.

[21] *Id.* at 197.

[22] *Id*. at 200.

> **Ground One**
> Conviction was obtained by the weight of the evidence not supporting the conviction obtained, violating due process.
>
> **Ground Two**
> The conviction was obtained with error from the trial court not awarding petitioner a Rule 29 dismissal.
>
> **Ground Three**
> The conviction was obtained and the trial court erred without allowing the jury to consider lesser included offense.
>
> **Ground Four**
> The conviction was obtained violating due process when the trial court failed to grant motion for mis-trial.
>
> **Ground Five**
> The trial court erred when it sentenced petitioner to consecutive sentences in violation of the Ohio Revised Code. The court failed to comply and did not support the findings in the instant case violating petitioner's due process rights.[23]

### III. Analysis

**A.   Jurisdiction and statute of limitations**

As noted, Wooden is currently incarcerated as a result of state convictions. Moreover, he filed this petition within one year[24] of the Ohio Supreme Court denying his motion for a delayed appeal.[25] Accordingly, in view of these facts, and that there is no evidence of a prior

---

[23] ECF # 1.

[24] *See* 28 U.S.C § 2244(d).

[25] That motion was denied December 24, 2003. ECF # 20 at 183. The present petition was filed April 9, 2004. ECF # 1.

petition by Wooden for habeas corpus, the petition should be considered timely, and the Court should find jurisdiction.

**B.      Wooden's petition is procedurally defaulted.**

A federal habeas petitioner is required to first exhaust all remedies available to him in state courts.[26] Normally, this process is satisfied when a petitioner fairly presents all his habeas claims to the highest court in the state, thus affording the state courts an opportunity to rule on those claims before they are presented to a federal court.[27]

However, where habeas claims have not been presented to the state's highest court, and may not now be so presented due to the application by the state courts of a procedural rule, a federal habeas court may not consider those claims without a showing by the petitioner of cause for failing to comply with the state rule and prejudice from the asserted constitutional defects claimed by the petition.[28]

The Sixth Circuit has established a four-part process to be followed in determining when to apply the cause and prejudice test for procedural default:

> First, the court must determine that there is a state procedural rule that is applicable to petitioner's claim and that petitioner failed to comply with the rule.
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.

---

[26] 28 U.S.C. § 2254(b)(1)(A).

[27] *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[28] *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with, and the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes*[29] that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.[30]

Here, the state alleges that all five grounds for habeas relief asserted by Wooden were made as assignments of error one, three, four, six, and seven to the state appeals court and denied.[31] The state further argues that Wooden's failure to timely appeal this decision to the Ohio Supreme Court, and that court's denial of Wooden's motion for a delayed appeal, constitutes adequate and independent state grounds for barring review of Wooden's habeas claims in federal court.[32]

Applying the procedure prescribed by *Maupin* to Wooden's petition, the Court initially notes that the denial by the Ohio Supreme Court of a motion for a delayed appeal is a procedural ruling, not a decision on the merits.[33] Such a denial is sufficient to bar consideration of claims included in the motion for delayed appeal by a federal habeas court.[34]

---

[29] *Wainwright v. Sykes*, 433 U.S. 72 (1977).

[30] *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

[31] ECF # 18 at 14.

[32] *Id.*

[33] *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

[34] *Id.*

Accordingly, under the final step of the *Maupin* analysis, the burden on Wooden is to show that there is cause for his failure to follow the state procedural rule and that he was actually prejudiced by the alleged constitutional error.

Here, Wooden has attempted no such showing in either respect. Cause can never be established by claiming ineffective assistance of counsel in post-conviction proceedings[35] or simply because petitioner has acted *pro se*.[36] Further, because Wooden has not established cause for his failure to follow state procedure, the Court need not consider the question of prejudice.[37] Finally, a review of the record and Wooden's silence in this regard do not offer any reason why this Court should address his claims to avoid a "fundamental miscarriage of justice."[38]

## IV. Conclusion

Because all of Wooden's grounds for habeas relief are barred from consideration by this Court due to procedural default, the Magistrate Judge recommends that this petition be dismissed with prejudice.

---

[35] *Ritchie v. Eberhart,* 11 F.3d 587, 591-92 (6th Cir. 1993) (plurality opinion by Nelson, J.).

[36] *See*, *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

[37] *Carrier*, 477 U.S. at 494-95.

[38] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

Moreover, pursuant to the rule pronounced in *Slack v. McDaniel*,[39] the Magistrate Judge recommends that a certificate of appealability under 28 U.S.C. § 2253(c) not issue in that reasonable jurists would not find it debatable that a procedural bar is operative in this case.

Dated:  March 24, 2006                                  s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[40]

---

[39] *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

[40] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).